UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL BRUNO, <br><br> Plaintiff, <br><br> v. <br><br> HYATTE, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-800-JD-MGG |

OPINION AND ORDER

Michael Bruno, a prisoner without a lawyer, filed an amended complaint against Warden Hyatte, Internal Affairs Officer McGee, and Correctional Officer Callaway. ECF 17. He also filed a motion to clarify or reconsider the court's screening order. ECF 16. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his amended complaint, Bruno asserts essentially the same facts as he asserted in his original complaint. In July 2020, Bruno states that Officer McGee directed prison officers to shake down his cell on five occasions. ECF 17 at 2. During the July 27, 2020, shakedown, McGee removed Bruno's personal property from his cell and took it to his

office to inspect it for contraband. *Id*. Some of the items that were taken from Bruno's cell included a beard trimmer, glasses, a prayer rug, religious books, gym shoes, a GTL tablet, 30 photos of his father, a hot pad, clothing, and a watch. ECF 17 at 1-2, 4; 17-1 at 3. While no contraband was found, Bruno states McGee never returned his property and McGee told him he would continue to order shakedowns of his cell until he found something to write him up on a disciplinary charge. ECF 17 at 3.

On July 28, 2020, McGee gave Bruno's personal property to Officer Callaway in L Dorm. ECF 17 at 2. Callaway then gave the property to an offender in L Dorm, who later set the property outside of his cell and informed Callaway that the property did not belong to him. *Id*. Callaway subsequently retrieved the property from outside the cell and the property was later destroyed. *Id*. Bruno asserts Callaway should have returned the property to him or given him notice that the property would be destroyed if Bruno did not take possession of it. *Id*. at 2-3.

Bruno asserts that McGee violated his Fourteenth Amendment rights because he directed prison officers to confiscate his personal property from his cell during the July 27, 2020, shakedown of his cell and then failed to return the property to him. ECF 17 at 3. Bruno also asserts that Callaway violated his Fourteenth Amendment rights because he may have played a role in the destruction of his property and did not give him notice that his personal property would be destroyed. *Id*. at 2-3. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional

depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, the taking of Bruno's property does not state a claim.

Bruno also believes that his constitutional rights were violated because he was not given a form or document explaining why his property had been confiscated from his cell or why the property would not be returned to him. ECF 17 at 2, 3, 5, 6, 8. He asserts that Indiana Department of Correction ("IDOC") policy mandates that he be given such a form. *Id*. But, a violation of the IDOC's policies does not equate to a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Therefore, the failure to provide Bruno with a form or document when his property was taken does not state a claim.

Bruno, who is Muslim, further alleges that McGee violated his First Amendment right to practice his religion because his religious belongings, which were part of his personal property, were confiscated from his cell during the July 27, 2020, shakedown and later destroyed. ECF 17 at 4-5. Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Furthermore, the Equal Protection Clause and the Establishment Clause prohibit a defendant from treating members of some religious faiths more favorably than others without a secular reason. *See Cruz v. Beto,* 405 U.S. 319, 322-23 (1972); *Nelson v. Miller,* 570 F.3d 868, 880-82 (7th Cir. 2009). "The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). However, Bruno alleges only that McGee directed that his cell be shaken down; he does not allege McGee directed that materials of a religious nature be confiscated or the shakedowns were designed to deprive him of his religious belongings. Thus, the allegations in the amended complaint do not state a claim.

Bruno has also sued Warden Hyatte alleging that he failed to protect him from McGee's wrongful acts of shaking down his cell and confiscating his personal property. ECF 17 at 4, 6-7; 17-1 at 2. He wrote Warden Hyatte a letter on July 30, 2020 and filled out request forms in an effort to put Warden Hyatte on notice and make him aware of

4

McGee's actions. *Id*. Bruno requested that Warden Hyatte talk to McGee, but Warden Hyatte ignored his pleas and refused to help him or protect his personal property. *Id*.

However, Bruno has already been told that "'no prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." ECF 15 at 4. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. Similarly, Bruno cannot hold Warden Hyatte liable for the suffering he allegedly experienced due to McGee's actions simply because Warden Hyatte knew about Bruno's allegations. Therefore, he has not stated a claim against Warden Hyatte.

As a final matter, Bruno filed a motion to clarify or reconsider the court's screening order. ECF 16. Because Bruno filed an amended complaint, his motion will be denied as moot.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, the court:

(1) DENIES AS MOOT Michael Bruno's motion to clarify or reconsider the court's screening order (ECF 16); and

(2) DISMISSES this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED on January 24, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

6